UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| TAMEEM NAJI SALEM QURAEA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as United States Secretary of State, et al., <br><br> Defendants. | Case No. 24-cv-12958 <br><br> Honorable Robert J. White |

**OPINION AND ORDER GRANTING THE STATE DEPARTMENT DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

I.  Introduction

Tameem Naji Salem Quraea and his wife, Ohud Adel Zindani ("Quraea" collectively), commenced this mandamus action to compel United States Secretary of State Marco Rubio and Senior Bureau Official for Consular Affairs, John Armstrong (the "State Department Defendants"), to direct consular officials reconsider the revocation of his immigration visa.[1]

---

[1] Marco Rubio became the United States Secretary of State on January 21, 2025. U.S. Department of State, Biographies, Marco Rubio – Secretary of State, https://www.state.gov/biographies/marco-rubio/ (last visited Sep. 17, 2025). John Armstrong became the Senior Bureau Official for Consular Affairs on February 27,

Before the Court is the State Department Defendants' motion to dismiss the complaint. (ECF No. 9). Quraea responded in opposition. (ECF No.11). The State Department Defendants filed a reply. (ECF No. 12). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is granted.

II.  Background

    A.  *Factual History*

Quraea is a Yemeni citizen. (ECF No. 1-1, PageID.29; ECF No. 1-2, PageID.31). His wife Ohud is an American citizen. (ECF No. 1, PageID.1, ¶ 1). She filed a Form I-130 Petition for Alien Relative on Quraea's behalf. (*Id.*). The State Department approved the petition and issued Quraea an immigration visa on August 11, 2024. (*Id.*, PageID.2, 15, ¶¶ 5, 100).

Quraea flew to the United States from Doha, Qatar and arrived at Boston's Logan International Airport on September 4, 2024. (*Id.*, PageID.2, 15, ¶¶ 6, 101; ECF No. 9-2, PageID.80). As part of their secondary inspection, CBP officers searched his mobile phone. (ECF No. 1, PageID.2, 15, ¶¶ 7, 102; ECF No. 9-2, PageID.81). They discovered depictions of Hamas and Houthi rebel propaganda

---

2025. U.S. Department of State, Biographies, John Armstrong – Senior Bureau Official, Bureau of Consular Affairs, https://www.state.gov/biographies/john-armstrong/ (last visited Sep. 17, 2025). Pursuant to Federal Rule of Civil Procedure 25(d), Marco Rubio is substituted for Anthony J. Blinken and John Armstrong is substituted for Rena Bitter as the defendants in this action.

that Quraea had apparently "favorited."[2] (ECF No. 9-2, PageID.81). Officers also found photos of Quraea attending the funeral for a "Houthi martyr" in Yemen.[3] (*Id.*, PageID.81-82). The officers deemed Quraea inadmissible and offered him the opportunity to withdraw his application for admission to the United States in lieu of a formal expedited removal proceeding. (*Id.*, PageID.82). Quraea accepted this option. (*Id.*; ECF No. 1-1, PageID.30; ECF No. 9-3, PageID.84). The CPB officers revoked his visa and physically cancelled it.[4] (ECF No. 1-1, PageID.29; ECF No. 1-

---

[2] The Secretary of State designated both Hamas and the Houthi rebels ("Ansar Allah") as Foreign Terrorist Organizations. *See* United States Department of State, Bureau of Counterterrorism, Designated Foreign Terrorist Organizations, https://www.state.gov/foreign-terrorist-organizations (last visited Sep. 17, 2025).

[3] The CPB officers informed Quraea that his wife had acknowledged that he "regularly attend[ed] Houthi meetings and maintain[ed] relationships with members of the Houthis . . ." (ECF No. 9-2, PageID.82). Quraea denied this account. (*Id.*).

[4] This information is gleaned from the Form I-867A attached to the State Department Defendants' motion to dismiss. (ECF No. 9-2, PageID.78-82). Although extraneous to the pleadings, the Court may consider the form for two separate reasons: (1) it is a public record, and (2) it is central to Quraea's claims seeking consular review of the CBP officers' visa revocation because the Form I-867A explains why the officers revoked the visa in the first place. *See Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider . . . public records . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."); *see also United States v. Rivera-Soto*, 451 F. App'x 806, 807-08 (11th Cir. 2011) (holding that "routinely and mechanically kept immigration records, such as deportation warrants, are admissible as public records" and that the Form I-867 "records the sworn statement of an alien prior to removal [and] contains routine biographical information obtained primarily for the proper administration of our immigration laws and policies.") (internal quotation marks omitted); *Torrez v. Swacina*, No. 20-20650, 2020 U.S. Dist. LEXIS 68977, at *12-

3

2, PageID.31; ECF No. 9-3, PageID.83). He left the United States on the next available flight to Egypt. (ECF No. 1, PageID.2, ¶ 10).

    B.    *Procedural History*

Quraea filed this lawsuit seeking mandamus relief and alleging causes of action under the Administrative Procedure Act. (ECF No. 1, PageID.19-27, ¶¶ 123-72). He seeks to, in effect, compel the State Department Defendants to direct consular officials to reconsider the CBP officers' revocation of his visa. (ECF No. 11, PageID.93, 96). The State Department Defendants now move to dismiss the complaint on the ground that Quraea lacks Article III standing to maintain this action. (ECF No. 9).

III.    <u>Legal Standards</u>

Federal courts may dismiss a petition for a writ of mandamus pursuant to Federal Rule of Civil Procedure 12(b). *See Gratton v. Wildasin*, No. 21-5824, 2022 U.S. App. LEXIS 17228, at *3, 9 (6th Cir. Jun. 22, 2022) (affirming the dismissal of a mandamus petition under Rule 12(b)(1) and (6)); *Gratton v. Cochran*, No. 19-5176, 2020 U.S. App. LEXIS 59, at *2, 9 (6th Cir. Jan. 2, 2020) (same).

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction. Rule 12(b)(1) motions for lack of

---

13 (S.D. Fla. Apr. 17, 2020) (considering a Form I-867A when deciding a motion to dismiss the complaint because the form was central the plaintiff's claims).

subject matter jurisdiction may challenge either (1) the facial sufficiency of the pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial challenges address whether the pleading alleges a basis for subject matter jurisdiction. The Court views the pleading's allegations as true and construes them in the light most favorable to the nonmoving party. *Id.*

Whether a party has standing raises an issue of the Court's subject matter jurisdiction under Rule 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff, as the party invoking federal jurisdiction, carries the burden of establishing the elements of standing. *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 363 (6th Cir. 2021).

IV.  Analysis

Congress invested federal district courts with original jurisdiction over various subject matters through statutory enactment. *See, e.g.,* 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), 1361 (mandamus relief against federal officers, employees, and agencies).

Yet, "[n]o matter what Congress provides by statute, the plaintiff must still satisfy" the federal constitution's Article III "standing prerequisites." *Buchholz v. Tanick*, 946 F.3d 855, 867 (6th Cir. 2020). Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S.

5

Const. art. III, § 2. The doctrine of standing emanates from this "case-or-controversy" requirement and "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Mandamus petitions are not exempt from Article III's "case-or-controversy" requirement. *See Hussein v. Beecroft*, 782 F. App'x 437, 441-43 (6th Cir. 2019) (affirming the dismissal of a mandamus petition on Article III mootness grounds); *see also In re Nat'l Prescription Opiate Litig.*, Nos. 22-3493/3653, 2022 U.S. App. LEXIS 34312, at *19 (6th Cir. Dec. 13, 2022) (concluding that mandamus petitioners lacked Article III standing).

Since this case is at the pleading stage, Quraea must "clearly . . . allege facts demonstrating" (1) an imminent, concrete, and particularized injury-in-fact, that (2) is traceable to the State Department Defendants' conduct, and (3) can be redressed through a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). This "three-part test" must be satisfied for each injury he alleges, for each defendant he is suing, and for each remedy he is seeking. *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024). Here, the second and third prongs are not satisfied.

Assuming Quraea suffered a concrete and particularized injury – *i.e.*, the first standing prong – the complaint omits a plausible theory that (1) fairly traces that

injury to the State Department Defendants, and (2) explains how the State Department Defendants could redress that injury.

Quraea challenges the CBP officer's decision to revoke his visa pursuant to 22 C.F.R. § 41.122(e)(3). That provision authorizes "[a]n immigration officer . . . to revoke a valid visa by physically canceling it" when "[t]he alien is notified pursuant to [Immigration and Nationality Act] 235 by an immigration officer at a port of entry that the alien appears to be inadmissible to the United States, and the alien requests and is granted permission to withdraw the application for admission." *Id.*

Quraea's problem is that CBP is an agency within the United States Department of Homeland Security. U.S. Customs and Border Protection, CBP Organization Chart, https://www.cbp.gov/document/publications/cbp-organization-chart (last visited Sep. 17, 2025). The State Department does not oversee CBP or review a CBP officer's determination to revoke a visa. And Quraea fails to marshal any legal authority that directs State Department officials to perform such a function. So Quraea cannot fairly trace his injury, *i.e.*, the revocation of his visa, to the State Department Defendants.

Nor is it altogether clear how the State Department Defendants possess the requisite authority to "likely . . . redress" Quraea's injury, *i.e.*, the third standing prong. *Bowles*, 120 F.4th at 1310 (quotation omitted); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021). This is because the complaint lacks plausible

7

allegations "show[ing] what a federal court could order" the State Department Defendants "to do or refrain from doing" to afford him relief – "a redressability defect." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022). And Quraea does not contest the State Department Defendants' representation that there is no visa application currently pending with the State Department on his behalf.[5] (ECF No. 9, PageID.71, 74).

Quraea disagrees with these findings. He argues that the State Department's Foreign Affairs Manual ("FAM") 504.12-4 invests consular officials with the responsibility for reconsidering visa revocations.[6] (ECF No. 11, PageID.96-97). But this FAM sub-section provides guidance only for consular officials who are reconsidering the *State Department*'s revocation of a previously issued visa. *See* 9 FAM 504.12-2-3. It is not an administrative mechanism for empowering consular officials to review CBP visa revocations at a port of entry.

---

[5] It appears that Quraea also wants to reinstate his wife's earlier I-130 petition. (ECF No. 1, PageID.27, ¶¶ B-C). But according to the complaint, State Department officials already granted that petition and issued him a visa. So there is no existing petition for the State Department Defendants to reinstate. (*Id.*, PageID.2, 15, ¶¶ 5, 100).

[6] The Foreign Affairs Manual "contains directives and guidance . . . based on U.S. immigration law and regulations for consular officers making visa decisions, including the grounds of ineligibility for a visa." *Pietersen v. United States Dep't of State*, 138 F.4th 552, 556 (D.C. Cir. 2025) (quotation omitted).

8

For all these reasons, Quraea "fail[s] to allege the second and third elements of standing: traceability and redressability." *Nabors*, 102 F.4th at 335; *see also* 13A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.5 (3d ed. May 2025 Update) (stating that "causation and remedial benefit are often bound together by the perception that if the defendant has not caused the injury, an order against the defendant cannot remedy it."). He has "no standing to sue and thus no basis for moving forward with" his substantive claims. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020). "[T]he only function remaining to the court is that of announcing th[is] fact and dismissing the cause." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) (quotation omitted); *see also Freed v. Thomas*, 976 F.3d 729, 739 (6th Cir. 2020). Accordingly,

IT IS ORDERED that the State Department Defendants' motion to dismiss the complaint (ECF No. 9) is granted.

Dated: September 19, 2025

s/ Robert J. White
Robert J. White
United States District Judge